UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| COUNTRYWIDE HOME LOANS, INC., | ) | |
| | ) | |
| Appellant, | ) | Case No. 1:06-0060 |
| | ) | Judge Trauger |
| v. | ) | |
| | ) | |
| ROBERT H. WALDSCHMIDT, TRUSTEE | ) | |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM

This is an appeal from a judgment of the United States Bankruptcy Court for the Middle District of Tennessee, entering summary judgment in favor of the trustee and avoiding a lien of a first deed of trust held by the appellant. (Docket No. 1, Ex. 26) For the reasons discussed herein, the court will reverse the order granting summary judgment to the trustee and grant judgment in favor of the appellant. The trustee's avoidance action will be dismissed.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises from a mortgage refinancing agreement entered into by the debtors in close proximity to the filing of their petition for bankruptcy relief under Chapter 7 of the Bankruptcy Code. The debtors, Jay Allen Waters and Tonya Rae Waters, owned a parcel of real property in Columbia Tennessee. The debtors owed a debt to First Franklin Financial Corp. in the amount of $75,572.21, secured by a first deed of trust encumbering the property, and a debt to Household Financial Center, Inc., in the amount of $34,689.29, secured by a second deed of trust encumbering the property.

In July, the debtors entered into a refinancing agreement with the appellant, Countrywide

1

Home Loans, Inc. ("Countrywide"), under which the debts to First Franklin Financial Corp. and Household Financial Center, Inc., would be transferred to Countrywide. The debtors signed two promissory notes—one in the amount of $88,000 and another in the amount of $22,000—payable to Countrywide[1] and, to secure repayment on the notes, the debtors signed a first and second deed of trust encumbering the property, in favor of Countrywide. In return, Countrywide agreed to release funds, a portion of which were to be used to pay off the debts to First Franklin Financial Corp. and to Household Financial Center, Inc.

Under Regulation Z, C.F.R. § 226.31, the debtors had the right to rescind the refinancing agreements for three days after they were signed, the time period expiring at midnight on August 2, 2005. The debtors did not exercise that right. Countrywide dispersed the funds generated by the loans on August 3, 2005, and the debtors used them to pay off their prior debts. First Franklin Financial Corp. and Household Financial Center, Inc., each filed releases of their Deeds of Trust.

Countrywide filed its deeds of trust with the Maury County, Tennessee Register of Deeds on August 10, 2005. On August 26, 2005, the debtors filed for bankruptcy under Chapter 7 of the Bankruptcy Code. On October 18, 2005, the trustee, Robert H. Waldschmidt, filed an action against Countrywide to avoid the liens as preferential transfers pursuant to 11 U.S.C. § 547. On July 12, 2006, the Bankruptcy Court granted summary judgment in favor of the trustee, avoiding the liens. The Bankruptcy Court held that the transfers were voidable because they were made on account of an antecedent debt—that is, a debt that was owed prior to the transfers—finding

---

[1] More specifically, the $88,000 note was made payable to America's Wholesale Lender—an assumed name of Countrywide—while the $22,000 note was made payable to Countrywide.

that the transfers had been made at the time of perfection. On August 23, 2006, Countrywide appealed that order to this court. This court has jurisdiction to review the order under 28 U.S.C. § 158(a)(1).

## ANALYSIS

### I. Standard of Review

According to the traditional standard of review for bankruptcy appeals, the bankruptcy court's conclusions of law are reviewed *de novo*. *See, e.g., National City Bank v. Elliott (In re Elliott),* 214 B.R. 148 (6th Cir. BAP 1997) (citations omitted). *De novo* review requires the court to review questions of law independent of the bankruptcy court's determination. *In re Schaffrath,* 214 B.R. 153, 154 (6th Cir. BAP 1997) (citation omitted). The bankruptcy court's findings of fact, however, must be reviewed under the clearly erroneous standard. *In re Laguna Assoc. Ltd Partnership*, 30 F.3d 734, 737 (6th Cir. 1994); *see also In re Cannon* 277 F.3d 838, 849 (6th Cir. 2002). With this standard in mind, the court turns to an analysis of the appellant's claims.

### II. The Operation of the 10-Day Grace Period

Under 11 U.S.C. § 547(b), "the trustee may avoid any transfer of an interest of the debtor in property . . . (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made . . . on or within 90 days before the date of the filing of the petition; . . . and (5) that enables such creditor to receive more than such creditor would receive if . . . the case were a case under chapter 7 of this title; . . . the transfer had not been made; and . . . such creditor received payment of such debt to the extent provided by the provisions of this title." The Sixth Circuit

3

has held that "[a]ll five elements are prerequisites to the finding of a voidable preference." *In re Lowe*, 92 Fed. Appx. 129, 131 (6th Cir. 2003) (quoting *In re Arnett*, 731 F.2d 358, 360 (6th Cir. 1984)).

The appellant argues that the transfers in question were not "for or on account of an antecedent debt owed by the debtor before the transfer was made," 11 U.S.C. § 547(b)(2), the issue being, when the mortgage transfers were "made." There are two possibilities: either the transfers were "made" on the date when the agreement "took effect," or on the date when the security interests were perfected. The choice between these two possibilities is determined by the number of days between the date on which the transfer "took effect" and the date on which the security interests were perfected. At the time relevant to the facts of this case, 11 U.S.C. § 547(e)(2) provided that, if a lender perfected the security interest at or within ten days of the date that the transfer "took effect," then the transfer is deemed to have been "made" when the transfer "took effect." If the transfer were perfected at any subsequent time, however, it is deemed to have been "made" at the time of perfection.[2]

The appellant perfected its deeds of trust on August 10, 2005, whereas the debt was owed starting at the time when the appellant dispersed the funds to the debtors, on August 3, 2005. *See, e.g., Lowe*, 92 Fed. Appx. at 132 ("[W]e believe that Mr. Lowe's debt was incurred . . . when the bank disbursed funds to Mrs. Lowe."); *In re Pitman*, 843 F.2d 235, 239-40 (quoting

---

[2] 11 U.S.C. § 547(e)(2) has since been modified to allow for a thirty-day period between the date that the transfer "took effect" and the date of perfection, in order for the perfection to relate back and the transfer to be considered "made" on the earlier date. The modification went into law on April 20, 2005, which is before the actions in this case took place. However, under the enacting statute, the modifications did not take legal effect for 180 days after April 20, 2005, that is, on October 17, 2005. *See* PL 109-8, April 20, 2005, 119 Stat 23. Accordingly, the older language, providing for a ten-day period, applies to the case at hand.

4

with approval the "general common law principle[]" that "no duty to repay" arises "until the loan is made"); 5 Collier on Bankruptcy § 547.03 (15th ed. rev. 2000) (stating that a debt is antecedent if it is incurred before the transfer in question). Therefore, if the court were to find that the transfers were "made" on August 10, 2005, at the time of perfection, it would inevitably follow that the transfers were made "on account of an antecedent debt," which was incurred on August 3, 2005. Equally, if the court were to find that the transfers were "made" on or before August 3, 2005, it would follow that the transfers were not made "on account of an antecedent debt" and are, therefore, not voidable.

This leads the court back to the issue of whether the transfers were made at the time of perfection or at the time the transfer "took effect." The parties agree that perfection occurred on August 10, 2005. However, the parties dispute when the transfer "took effect." The trustee contends that the transfer "took effect" on July 29, 2005, the date on which the debtors signed the deeds of trust. In that case, twelve days would have passed between the date on which the transfer "took effect" and the date on which the liens were perfected. Under the operation of 11 U.S.C. § 547(e)(2), the transfers would have been made at the time of perfection, on August 10, 2005.

The appellant, to the contrary, contends that the transfer did not "take effect" until after the debtors' right of rescission under Regulation Z, 12 C.F.R. § 226.31, expired, at midnight on August 2, 2005. In that case, only seven days would have passed between the time that the transfer "took effect" and the time that the liens were perfected. Accordingly, under § 547(e)(2), the transfers would have been made on August 3, 2005, the date on which the transfers "took effect." Because that is also the date on which the debt was incurred under the refinance

5

agreements, under this view, the transfers would not have been made on an antecedent debt.

In *Lowe*, 92 Fed. Appx. at 132-33, the Sixth Circuit held that, because, "[u]nder Regulation Z, [the debtor] had an absolute right to cancel the transaction—and to rescind the mortgage—before midnight of July 5, 2000," and because "the bank did not disburse any of the proceeds of the loan until July 6, 2000," the mortgage, being unenforceable before the right of rescission was expired, did not "take effect" until after that date. *Lowe* seems to control the outcome of this case. As in *Lowe*, the debtor in this case had an absolute right to cancel the transaction until the expiration of the three-day waiting period, which occurred at midnight on August 2, 2005. Further, as in *Lowe*, the proceeds of the loan were not disbursed until after the expiration of this period, on August 3, 2005. Accordingly, both bases for the court's holding in *Lowe* are present in this case. Although *Lowe* is an unpublished case, in light of the fact that it has been cited by several other courts for this specific holding, *see In re Pendergrass*, 365 B.R. 833, 834 (Bankr. S.D. Ohio 2007) (citing *Lowe* for the proposition that, where "the debtor had an absolute right to cancel the refinance transaction and rescind the mortgage under Regulation Z, the actual disbursement date was the date the transfer was made"); *In re Comps*, 334 B.R. 235, 239 (Bankr. E.D. Mich 2005) ("[C]ase law supports the proposition that a mortgage transfer takes effect on the date on which the proceeds of the loan are disbursed."), the court finds that the rule announced in *Lowe* should apply to the case at hand.

The trustee seeks to distinguish *Lowe* on the grounds that it involved a transaction through which the debtor was acquiring a new interest in real property and not, as in the case at hand, a simple mortgage refinancing transaction. However, there is no reason to read the *Lowe* opinion as limiting itself to the particular transaction at issue in that case. To the contrary, the

6

court's holding in *Lowe*, that a mortgage transaction "takes effect" only after the expiration of Regulation Z's cancellation period, applies with equal force to a simple mortgage refinancing contract. The basis for the rule announced in *Lowe* is that, until the passage of this period, the debtor has an "absolute right" to cancel the contract. *Id*. at 132. That basis applies with equal force to pure mortgage refinancing agreements and to mortgage agreements involving new interests in property.

Further, the court in *Lowe* based its holding on two factors, both of which are present in the case at hand. Aside from the cancellation period created in Regulation Z itself, the court also based its decision on the fact that the bank had not disbursed the loan proceeds until the expiration of that period, holding that "[f]or both of these reasons . . . the mortgage was unenforceable before July 6 and the mortgage transfer took effect on that date." *Id*. Similarly, the appellant in this case did not release the funds to the debtors until after the expiration of the cancellation period, on August 3, 2005. Accordingly, the court finds that the transaction in this case did not "take effect" until after the expiration of the cancellation period. Because the appellant perfected its liens seven days later, on August 10, 2005, the court finds that the transfers were not made on an antecedent debt. The transactions are not voidable by the trustee. *See also In re David Paz*, No. 3:06-1105, slip op. at 3 (M.D. Tenn. Sept. 25, 2007) (holding that, "as a matter of law" an agreement "could not 'take effect' until after the expiration of the three day cancellation period under TILA").

The court's holding in this case conflicts with the Bankruptcy Court's decision in *In re Milliken*, No. 3:04-05872, slip op. at 4 (Bankr. M.D. Tenn. 2005). In *Milliken*, the Bankruptcy Court held that the language of § 547(e)(2) was "clear" regarding the perfection of security

7

interests and reasoned that, "[t]o read into the statute a three-day delay based on the right to rescind the refinancing agreement would directly circumvent the language of the Code, which specifically allows ten days to perfect." *Id.* Although *Milliken* succeeded *Lowe* by roughly two years, the Bankruptcy Court did not cite the *Lowe* opinion or attempt to distinguish its holding in any way. *Id.* Further, the court is not persuaded that the issue in this case—which involves the interpretation of the term "takes effect" as used in § 547(e)(2) and not merely the existence of the perfection requirement—is "clear" by any estimation. The issue is not whether a lender may "circumvent" the ten-day requirement for perfection but, instead, when that ten-day clock begins to tick. Determining the proper point at which the ten-day requirement should begin does not in any way "circumvent" the language of the Code. Rather, it enables the court to enforce the Code.

Accordingly, the court finds that, following the Sixth Circuit's decision in *Lowe*, the transfer agreement "took effect" on August 3, 2005 and, therefore, the appellant perfected its liens within the ten-day period set forth in § 547(e)(2). The transfers were not made on an antecedent debt and, therefore, are not voidable by the trustee.

## CONCLUSION

For the reasons stated herein, the Bankruptcy Court's Order granting Summary Judgment to the trustee will be reversed, and the court will enter judgment in favor of the appellants.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

8